UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


THOMAS HULL,

                Plaintiff,                              Hon. Richard Alan Enslen

v.                                                   Case No. 1:06 CV 291

JULIE FLETCHER, et al.,

                Defendants.

_____/


## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants Hoffman's and Fletcher's FRCP 56(b) Motion for Summary Judgment</u>.[1]  (Dkt. #16).  Pursuant to 28 U.S.C. § 636(b)(1)(B) granting authority for United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of motions for summary judgment, the undersigned recommends that Defendants' motion be **denied**.


## BACKGROUND

In his complaint, Plaintiff makes the following allegations.  (Dkt. #1).  On May 3, 2004, Plaintiff was examined by Defendant Fletcher, a registered nurse.  *Id.* at ¶ 1.  Plaintiff informed Fletcher that he was experiencing "severe" chest pains which were not being relieved by aspirin or Motrin.  *Id.*

---

[1] As discussed below, Plaintiff's claims against Defendant Fletcher (and Defendant Jones) were previously dismissed, while Plaintiff's claims against Defendants Hoffman and Nelson have been permitted to go forward.  The analysis advanced in support of the present motion refers only to Defendants Hoffman and Nelson.  Also, Defendants have submitted affidavits from only Defendants Hoffman and Nelson.  Thus, while the present motion purports to be submitted by Defendants Hoffman and Fletcher, such clearly represents a minor clerical error.  Accordingly, the Court has interpreted the present motion as being advanced by Defendants Hoffman and Nelson and shall analyze it as such.

When asked to describe his chest pains, Plaintiff responded that they feel "like a sharp pain in the center of the chest" lasting from 5-60 minutes.  *Id.* at ¶ 2.  Defendant Fletcher instructed Plaintiff that "the next time the chest pains occur let the unit officers know that you need to be sent to health services immediately and given an EKG."  *Id.* at ¶ 4.

On June 23, 2004, at approximately 2:45 a.m., Plaintiff awoke "from a sound sleep with severe chest pains."  *Id.* at ¶ 9.  He was sweating "profusely," experiencing nausea, and "envisioned dying."  Plaintiff called for Defendant Hoffman and informed him that "he thought he just had a heart attack."  Plaintiff requested medical attention.  *Id.*  Hoffman told Plaintiff that he "could have acid reflux."  *Id.* at ¶ 10.  Plaintiff disagreed, informing Hoffman that he had previously experienced chest pains.  Defendant Hoffman instructed Plaintiff to sit in the television room and wait for Defendant Nelson to come speak with him.  *Id.*

Defendant Nelson subsequently arrived and escorted Plaintiff into an office.  *Id.* at ¶ 11.  Plaintiff informed Nelson that he thought he "was having or just had a heart attack because he recently woke up with chest pains so severe that he thought he was going to die."  *Id.* at ¶ 12.  Defendant Nelson asked Plaintiff if he had previously experienced chest pains, to which Plaintiff responded "yes."  Plaintiff further indicated that he had "complained to health services about them and was instructed by the nurse that the next time this occurs let the unit officers know that he needs to be sent to health services immediately and given an EKG."  *Id.*

Defendant Nelson informed Plaintiff that "no medical staff was available" to treat him and that, therefore, he would have to wait until the medical staff reported for duty between 6:30 and 7:00 a.m.  *Id.* at ¶ 11.  Nelson further suggested to Plaintiff that he was probably experiencing "acid reflux."

*Id.* at ¶ 13.  Plaintiff informed Defendant Nelson that he had never experienced reflux and reiterated that what he was experiencing was "more serious than acid reflux."  *Id.*

At this point, Defendant Nelson asked Plaintiff to describe his symptoms.  *Id.* at ¶ 14. Plaintiff responded that he was experiencing a "very sharp" pain in his chest, nausea, sweating, and pain in his jaw and left shoulder.  *Id.*  Defendant Nelson gave Plaintiff an aspirin and instructed him to return to his cell because he could not receive medical care until the medical staff arrived in the morning.  *Id.* at ¶ 15.  Nelson told Plaintiff that he would "make sure health services are notified of his condition as soon as they arrive."  Nelson also informed Plaintiff that "he and the unit officers will monitor his condition until then."  *Id.*  As Plaintiff returned to his cell he heard Defendant Nelson tell Defendant Hoffman that "we're going to monitor his condition until health services arrives and calls him out."  *Id.* at ¶ 16.  Defendant Hoffman acknowledged this statement by stating "okay."  *Id.*

After returning to his cell Plaintiff lapsed "in and out of consciousness."  *Id.* at ¶ 18.  At approximately 8:00 a.m. Plaintiff walked to the officers' station "seeking assistance from the next shift of officers which were now on duty."  The officers on duty informed Plaintiff that they had not been informed about his condition or instructed that he required medical care.  Plaintiff was instructed to go to health services immediately.  *Id.*

Plaintiff arrived at health services approximately 15 minutes later, at which point he was examined and treated with nitroglycerin.  *Id.* at ¶ 19.  Plaintiff was also informed that an ambulance had been summoned to transport him to the hospital.  *Id.*  While he was waiting for the ambulance to arrive, Plaintiff asked one of the nurses if health services had been informed of his condition prior to 8:00 a.m. (when he walked to the officers' station).  *Id.* at ¶ 20.  The nurse informed Plaintiff that health services

was unaware of his condition until "about five minutes before you got here" (i.e., approximately 8:10 a.m.). *Id.*

Plaintiff arrived at the emergency room at approximately 9:40 a.m. *Id.* at ¶ 21. Plaintiff was given medication and administered an EKG examination, the results of which were "abnormal." Plaintiff was subsequently informed that he had suffered a heart attack. *Id.* On June 23, 2004, Plaintiff underwent a cardiac catheterization procedure, the results of which revealed total occlusion of the left anterior descending artery and moderately impaired left ventricular function. Plaintiff subsequently underwent a coronary angioplasty procedure to implant a stent in his left anterior descending artery. *Id.*

Plaintiff asserts that Defendants Hoffman and Nelson were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. Defendants Hoffman and Nelson now move for summary judgment, asserting that they did not realize that Plaintiff required immediate medical treatment when he requested their help in the early morning hours of May 3, 2004. Defendants also claim that they are entitled to qualified immunity. As discussed below, the Court finds that Plaintiff has presented sufficient evidence from which a reasonable juror could conclude that Defendants Hoffman and Nelson violated Plaintiff's Eighth Amendment rights. The Court further finds that Defendants Hoffman and Nelson are not entitled to qualified immunity. Accordingly, the Court recommends that Defendants' motion for summary judgment be denied.

## STANDARD

In reviewing a motion for summary judgment, the Court must confine itself to the narrow questions of whether there exist "no genuine issue[s] as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a Rule 56 motion, the Court

cannot try issues of fact, but is empowered to determine only whether there exist issues in dispute to be decided in a trial on the merits. *See Perez v. Aetna Insurance Co.*, 96 F.3d 813, 819 (6th Cir. 1996). The crux of the motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

A motion for summary judgment requires the Court to view "inferences to be drawn from the underlying facts...in the light most favorable to the party opposing the motion." *Matsushita Electric Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The opponent, however, has the burden to show that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial.'" *Historic Preservation Guild of Bay View v. Burnley*, 896 F.2d 985, 993 (6th Cir. 1989).

As the Sixth Circuit has recognized, the Supreme Court has encouraged the granting of summary judgments, as such may be "an appropriate avenue for the 'just, speedy and inexpensive determination' of a matter." *Kutrom v. City of Center Line*, 979 F.2d 1171, 1173 (6th Cir. 1992). Consistent with this concern for judicial economy, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient." *Anderson*, 477 U.S. at 252. Furthermore, mere allegations do not suffice. *See Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989) ("the party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact").

## ANALYSIS

**I.        Plaintiff's Eight Amendment Claims**

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06.

The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. If the objective test is met, the Court must then determine whether the official possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.*

In other words, Plaintiff must establish that Defendants "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*, 511 U.S. at 847). To establish that Defendants acted with the requite culpability, Plaintiff must establish either that Defendants possessed actual knowledge that he experienced a serious medical need or by

demonstrating that the circumstances clearly indicated that he was experiencing serious medical needs. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895-96 (6th Cir. 2004) (citation omitted).

However, where a prisoner claims that his requests for medical treatment were delayed (rather than denied), the court may need to evaluate the effect of the alleged delay in treatment. *See Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001). In *Napier*, the court reviewed the dismissal (on summary judgment) of Napier's claim that while he was incarcerated prison officials did not permit him to attend a scheduled dialysis treatment. *Id.* at 740-42.

Napier was jailed on December 4, 1997, at which time he informed jail officials that he suffered from kidney failure and was scheduled to attend dialysis the following day. *Id.* at 741. Plaintiff did not attend this scheduled dialysis session, however, and was released from jail late in the evening of December 5, 1997. *Id.* Napier asserted that jail officials did not permit him to attend his dialysis session in violation of the Eighth Amendment. *Id.* at 740-42.

The court noted that Napier, who had been incarcerated for only 29 hours, could have sought dialysis treatment immediately upon his release from jail, but failed to do so. *Id.* at 742-43. The court further observed that Napier failed to attend his scheduled dialysis session the following Monday, December 8, 1997. *Id.* at 743. The court, therefore, interpreted Napier's claim as a delay of medical treatment claim rather than a denial of treatment claim. *Id.* at 742-43. The court indicated that to determine whether the alleged deprivation was "sufficiently serious," as required by the objective component of the Eighth Amendment analysis, the court must examine the "effect of the delay in treatment." *Id.* at 742 (citations omitted). In this respect, the court held that

> [a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.

*Id.* (citation omitted).

In analyzing Napier's claim, the court noted that his treating physician testified that "missing the treatment did not affect [Napier's] mortality or morbidity." *Id.* at 743. A medical expert also testified that while Napier "should attend all of his treatments," there was no evidence that he suffered "any medical detriment" by missing his December 5, 1997 dialysis treatment. The court, therefore, concluded that Napier "has not offered any medical evidence to show that he suffered a detrimental effect from being kept from his scheduled dialysis." Accordingly, the court concluded that the district court properly granted summary judgment to defendants. *Id.*

Following *Napier*, if a prisoner asserted that he experienced an unconstitutional delay in medical treatment, his claim was subject to dismissal unless he submitted medical evidence establishing that the alleged delay in treatment he experienced caused him to suffer a detrimental effect. However, in *Blackmore v. Kalamazoo County*, 390 F.3d 890 (6th Cir. 2004), the Sixth Circuit revisited this issue and clarified its holding in *Napier*.

In *Blackmore*, the Kalamazoo County Sheriff's Department arrested Blackmore at approximately 3:30 a.m. on May 27, 2000. *Id.* at 894. Blackmore was booked and placed into a cell at approximately 5:45 a.m. Approximately one hour later, Blackmore began experiencing abdominal pain and requested medical care. Blackmore did not receive medical care and continued to complain of serious abdominal pain. Blackmore subsequently filed a health care request in which he complained of "sharp" and "extreme" abdominal pain. Blackmore reported that he had been experiencing abdominal pain for 26 hours and required medical attention "right away." Jail officials placed Blackmore in an observation cell, but still did not provide him with medical treatment. On the morning of May 29, 2000, "over two complete days after his first complaint of pain," Blackmore was examined by a jail nurse, who

reported that Blackmore was suffering "classic signs" of appendicitis.  Blackmore was transported to a local hospital where he underwent a successful appendectomy later that day.

Blackmore later brought a civil rights action against his jailers, asserting that they violated his constitutional rights by "denying him prompt medical care for a serious medical need."  Observing that Blackmore "has not offered any medical evidence to show that he suffered a detrimental effect from not having his surgery earlier," the district court, relying on *Napier*, granted the defendants' motion for summary judgment.  *Id.*  On appeal, the Sixth Circuit reversed the district court's decision.

With respect to the objective component of the Eighth Amendment analysis, the court of appeals indicated that a prisoner need only show that he "is incarcerated under conditions posing a substantial risk of serious harm."  *Id.* at 896 (citations omitted).  A prisoner satisfies this requirement where he establishes that he was experiencing "serious medical needs."  *Id.*  With respect to this requirement, the court observed that "[m]ost other circuits" hold that a medical need is objectively serious if it "has been diagnosed by a physician as mandating treatment" or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Id.* at 897.

The court noted that it had previously (in unpublished opinions) evaluated the seriousness of a prisoner's medical needs by this "obviousness approach."  However, the court further noted that this "obviousness standard for determining a serious medical need is distinct from a separate branch of Eighth Amendment decisions where the seriousness of a prisoner's medical needs may *also* be decided by the *effect* of delay in treatment."  *Id.* (emphasis in original).  Thus, the Court concluded that

> the verifying medical evidence requirement is relevant to those claims involving minor maladies or non-obvious complaints of a serious need for medical care. . .In a word, *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers.  *Napier* applies where the plaintiff's deliberate

indifference claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

*Id.* at 898.

To underscore its conclusion, the Court further stated that

[t]o the extent our previous opinions would benefit from clarification, we hold today that where a plaintiff's claims arise from an injury or illness so obvious that even a layperson would easily recognize the necessity for a doctor's attention, the plaintiff need not present verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated. Instead, it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame.

*Id.* at 899-900 (internal citations omitted).

Finding that Blackmore "exhibited obvious manifestations of pain and injury" from which a jury could conclude that he was experiencing "a serious need for medical care that was so obvious that even a layperson would easily recognize the necessity for a doctor's attention," the Sixth Circuit reversed the district court's decision granting the defendants' motion for summary judgment. *Id.*

It is not clear whether Plaintiff is alleging that Defendants *denied* him medical treatment or whether he is asserting that Defendants' actions caused him to suffer a *delay* in medical treatment. The result, however, is the same regardless how Plaintiff's claims are characterized.

In response to Defendants' motion for summary judgment, Plaintiff has submitted an affidavit, as well as copies of certain medical records. This evidence is sufficient for a reasonable juror to conclude that the injury or illness from which Plaintiff was suffering in the early morning hours of June 23, 2004, was "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *See, e.g., Plemmons v. Roberts*, 439 F.3d 818, 823-24 (8th Cir. 2006) (recognizing that arm

and chest pain, sweating, and nausea constitute "classic heart attack symptoms"); *Carter v. City of Detroit*, 408 F.3d 305, 312 (6th Cir. 2005) ("even laypersons can be expected to know that a person showing the warning signs of a heart attack needs treatment immediately in order to avoid death"); *Forton v. County of Ogemaw*, 435 F.Supp.2d 640, 651 (E.D. Mich. 2006) ("evidence that the defendant disregarded the classic symptoms of a heart attack and the plaintiff's cries that she needed to go to a hospital was sufficient to support an inference that satisfied the subjective component"). This evidence is sufficient for a reasonable juror to conclude that Plaintiff was "incarcerated under conditions posing a substantial risk of serious harm," thus satisfying the objective prong of the analysis.

As for whether Defendants possessed a sufficiently culpable state of mind, Plaintiff has submitted evidence which supports the conclusion that in the early morning hours of June 23, 2004, he was experiencing a serious medical need to which Defendants did not properly respond. As is recognized, "evidence that [a] defendant disregarded the classic symptoms of a heart attack" as well as the prisoner's requests for medical treatment is "sufficient to support an inference that satisfie[s] the subjective component" of the Eighth Amendment analysis. *Forton*, 435 F.Supp.2d at 651 (citing *Carter*, 408 F.3d at 312). In sum, Plaintiff's evidence is sufficient to permit a reasonable juror to conclude that Plaintiff experienced a serious need for medical treatment which was not addressed within a reasonable amount of time, causing him to suffer the unnecessary and wanton infliction of pain in violation of the Eighth Amendment.

## II.          Qualified Immunity

Defendants also assert entitlement to qualified immunity. The doctrine of qualified immunity recognizes that government officials must be able to carry out their duties without fear of

harassing litigation. *See Davis v. Scherer*, 468 U.S. 183, 195 (1984). As is well recognized, they can do so only if they reasonably can anticipate when their conduct may give rise to liability for damages, and if unjustified lawsuits are quickly terminated. *Id.*

Generally, when government officials perform discretionary functions, they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also, Behrens v. Pelletier*, 516 U.S. 299, 301 (1996). The question of whether qualified immunity attaches to an official's actions is purely a legal question for the trial judge to determine prior to trial. *See Bell-Bey v. Williams*, 87 F.3d 832, 836 (6th Cir. 1996).

In determining whether an official is entitled to qualified immunity, the focus is on the objective legal reasonableness of the official's actions in light of clearly established law. *See Harlow*, 457 U.S. at 818; *Bell-Bey,* 87 F.3d at 836. Defendants are entitled to qualified immunity unless the contours of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *McBride v. Village of Michiana*, 100 F.3d 457, 460 (6th Cir. 1996) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The unlawfulness of the conduct at issue must be apparent in light of pre-existing law. *See Anderson*, 483 U.S. at 640.

No credible argument can be advanced that a reasonable official would failed to have understand that refusing and/or unreasonably delaying medical care to a prisoner experiencing the classic signs of a heart attack violates the Eighth Amendment. The Court recommends, therefore, that Defendants are not entitled to qualified immunity.

**CONCLUSION**

For the reasons articulated herein, the Court recommends that <u>Defendants Hoffman's and Fletcher's FRCP 56(b) Motion for Summary Judgment</u>, (dkt. #16), be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date: December 13, 2006                         /s/ Ellen S. Carmody
                                                ELLEN S. CARMODY
                                                United States Magistrate Judge